United States District Court
for the
Southern District of Florida

| United States of America, Plaintiff, | ) | |
|---|---|---|
| v. | ) ) ) | Criminal Case No. 19-20792-CR-Scola |
| Keanu Brian Logan, Defendant. | ) ) ) | |

### Order Granting Motion to Suppress

Defendant Keanu Brian Logan asks the Court to suppress physical evidence found when State of Florida probation officer searched his residence as part of a random probation search without reasonable suspicion or probable cause. (Def.'s Mot. to Suppress, ECF No. 18.) The Government counters that the search was lawful because Logan consented to searches as a condition of his probation. (Resp., ECF No. 27.) The Court held an evidentiary hearing on June 21, 2021 and heard testimony from Probation Supervisor LaToya Warren and Detective Angelica Dolan. Having considered the arguments of the parties, the credible evidence and testimony presented at the hearing, and the relevant legal authorities, the Court **grants** Logan's motion to suppress. **(ECF No. 18.)**

1. **Background**

On July 15, 2019, Logan was released from jail and commenced a 2-year term of probation probation after pleading guilty, in the Eleventh Judicial Circuit Court for Miami-Dade County, to charges of possession of a firearm by a convicted felon and possession of a controlled substance. (Order of Probation, ECF No. 28-1.) The order of probation enumerated a list of standard conditions of supervision, including the condition that Logan "will promptly and truthfully answer all inquiries directed to [him] by the court or the officer, and allow your officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions your officer may give you." (*Id.*) The trial judge did not set any special conditions of probation. (*Id.*) On July 26, 2019, Logan reviewed and executed a separate document titled "Florida Department of Corrections Instructions for the Offender" ("Form DC3-246"). (Instructions for Offender, ECF No. 27-1.) The instruction form provides "Probation officers will conduct home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence." (*Id.* at 3.)

At the outset of his probation, Logan lived with his parents and sister in Miami, Florida. In September 2019, Logan, his girlfriend, and her family moved

into an apartment located at 13142 Port Said Road, Apartment 2133, Opa-Locka, Florida. Opa-Locka is known to law enforcement for its high crime rates.

On September 13, 2019, Probation Supervisor Warren and Miami-Dade officers, including Detective Dolan, arrived at Logan's apartment. Detective Dolan and the other police officers waited outside while Warren conducted a random probation search which recovered a holster and ammunition in Logan's bedroom. The Government concedes there was no reasonable suspicion for the search.

In his motion to suppress, Logan argues that the warrantless and suspicionless search by the probation officer is unconstitutional because his probation order did not include an express condition that he must submit to warrantless searches. (ECF No. 28 at 2-3.) Because warrantless searches are not a condition of his probation, Logan argues, the Government is required to show that it had reasonable suspicion to search his residence, which it cannot show. In opposition, the Government argues that the search is valid regardless of the level of suspicion because Logan had provided advance consent to searches as a condition of his probation. (ECF No. 27 at 1.) The Government cites to the DC3-246 form which expressly states that "Probation officers have the right to search your residence." (*Id.* at 4.) Alternatively, even if the Government did not have the necessary suspicion or advance consent, that the search was based on the probation officer's good faith reliance on Florida law and the evidence recovered should not be excluded. (*Id.*)

Accordingly, the dispute between the parties centers on two issues: (1) whether Logan's expectation of privacy was so diminished, due to a condition of probation, to allow a suspicionless and warrantless search; and (2) even if the search violated the Fourth Amendment, whether the probation officer acted in good faith and thus the exclusionary rule does not apply.

## 2. Summary of Testimony

### a. LaToya Warren

Warren is a correction/probation supervisor for the Florida Department of Corrections. She supervises eight other probation officers but also does warrantless searches and assists in field work when needed.

Warren is familiar with the process of completing a probation form, which is later filed with the Clerk of the Court and governs the terms of probation. In court after a plea colloquy, offenders are instructed on the conditions of probation by an in-court probation officer. The offender then goes to an assigned probation office, is assigned a probation officer and the officer goes over the supervision order as well as an intake packet. The judge and the

offender sign the probation form after it is filled out by the probation officer. The probation form is not considered final or ready to be filed until it is signed by a trial judge. If an offender does not agree with any conditions or states they will not comply with the conditions, the case is put back on the court calendar. The probation form includes several standard and special conditions. A standard condition of supervised release expressly states the offender must follow the instructions of the probation officer.

  Warren is familiar with Logan, who was convicted in Miami-Dade Circuit Court of two different felony cases. He received as split sentence of jail followed by probation. Warren understands that Florida law allows random warrantless searches of offenders without reasonable suspicion.

  The probation orders from Logan's two felony cases include standard conditions of probation. (Gov.'s Ex. 1 and 2.) Condition 9 of the probation orders states, "You will promptly and truthfully answer all inquiries directed to you by the court or the officer, and allow your officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions you officer may give you." The standard order of probation form has a condition on page five which applies to sex offenders under supervision and includes condition 24 which states, "Submission to a warrantless search by the community control or probation officer of the offender's person, residence, or vehicle." This condition was not imposed on Logan in either probation order.

  The DC3-246 form titled "Florida Department of Corrections Instructions for the Offender," provides a list of instructions to offenders and guidance for filing grievances. (Gov.'s Ex. 3.) On page two, there is a section titled "Home Verifications" which states, "Probation officers will conduct home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence." That form was signed by Defendant on July 26, 2019. Had Logan failed to sign the form, it would constitute a violation of probation because he was not following the instructions of his probation officer.

  On September 12, 2019, Warren filled out a Search Report indicating she was planning a random search of Logan's sleeping area and common areas in residence. (Def.'s Ex. A.) The following day, on September 13, 2019, Warren went to Logan's residence to conduct a random search. Warren knocked on the door and Logan's girlfriend answered the door. Warren saw Logan standing inside the residence. Warren told Logan to identify himself and asked him to show her where he slept within the apartment. There were two bedrooms in the apartment. Logan said his room was upstairs in the back and pointed out where his bedroom was located.

  Miami-Dade police conducted a protective sweep of the apartment before

Warren conducted her search. Warren then conducted the search on her own while the officers waited outside of the apartment. She started in Logan's bedroom. When she lifted the comforter of the bed, an ammunition clip with ammunition in it fell onto the bed. She then located a holster under the mattress. Warren then searched a closet located outside Logan's bedroom in a hallway and found a loaded firearm inside a box. The box was not fully closed so Warren could see the firearm without opening the box. Warren did not search the second bedroom of the apartment.

Warren went downstairs and told Detective Dolan about what she had found. The officers then secured the premises while a search warrant was obtained to search the residence.

The Government's Exhibit 3 is a photograph, which shows Logan's bedroom with the clip and holster on the floor and there is no comforter on the bed at the time this photo was taken but the photo was taken by the police after execution of the search warrant.

### b. Angelica Dolan

Dolan is a detective with the Miami-Dade Police Department. She is now a homicide investigator but was in the northside district's crime suppression unit in 2019. As part of her duties, she participated in probation searches.

Dolan participated in the search of Logan's apartment. Logan was randomly chosen as part of a number of probation searches conducted that day. On September 13, 2019, Dolan and other officers arrived at Logan's apartment to accompany Warren during the compliance search. Dolan was present with more than 5 other police officers, some of whom were in uniform. Dolan did not participate in the initial search conducted by Warren.

After Warren completed the search, Warren told Dolan she had found a firearm in a hallway closet and had also found a loaded ammunition clip and holster in Logan's bedroom. Dolan went into the apartment with Warren and other officers to conduct a brief protective sweep of the apartment.

Dolan went into the apartment with Warren who pointed out the firearm and clips and holster to Dolan. Dolan then had her officers secure the apartment and she prepared a search warrant and presented the warrant of a Miami-Dade Circuit judge who signed the warrant.

Once the warrant was signed, Dolan participated in the search of the apartment. The clip and holster found in Logan's bedroom were photographed and impounded as evidence. Officers also found marijuana downstairs and a firearm and additional clips were found in the bedroom which was not Logan's bedroom.

After the warrant was executed, Logan was arrested on the State of Florida charge of possession of ammunition by a convicted felon. Dolan does not believe she ever spoke with Logan.

### 3. Logan Did Not Consent to the Search and the Government Did Not Have Reasonable Suspicion

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures applies to probationers, but probationers have a diminished expectation of privacy and "are subject to limitations to which ordinary citizens are free." *United States v. Riley*, 706 F. App'x 956, 959 (11th Cir. 2017) (quoting *Owens v. Kelley*, 681 F.2d 1362, 1367–68 (11th Cir. 1982)).

The Eleventh Circuit and the United States Supreme Court have held that the Fourth Amendment is not violated when a probationer's home is searched based on only reasonable suspicion, absent consent and absent a warrant. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 114, 121–22, 122 S.Ct. 587, 589, 592–93, 151 L.Ed.2d 497 (2001) (holding warrantless search of probationer's home by law enforcement officer for investigatory purposes was reasonable, when conditions of probation included a search term and search was supported by reasonable suspicion); *United States v. Yuknavich*, 419 F.3d 1302, 1310–11 (11th Cir. 2005) (holding search of probationer's computer by probation officers was reasonable, even in absence of a search provision, when conditions on probationer's computer use reduced his expectation of privacy in his computer); *United States v. Carter*, 566 F.3d 970, 973–75 (11th Cir. 2009) (per curiam) (holding warrantless search of probationer's home by probation officers based on reasonable suspicion was constitutionally permissible, when conditions of probation required probationer to submit to home visits, but not searches).

In *Carter*, the Eleventh Circuit held that a warrantless search of a probationer's home by probation officers was constitutional even in the absence of a condition of probation permitting such a search. *Id.* at 973-75. There, the appellate court balanced the parties' interests and concluded the reasonable suspicion was the correct standard for assessing the constitutionality of the search at issue. *Id.* at 974. The court noted that the probationer had consented to "submit to visits by the probation officer at his home, workplace, or elsewhere." *Id.* at 975. The court held that although Carter

possessed a higher expectation of privacy than the defendants in *Knights* and *Yuknavich* because he lacked an express search condition, a condition of probation that required him to submit to home visits by his probation officer nevertheless reduced his expectation of privacy. *Id.* The court found that the government had reasonable suspicion and upheld the search. *Id.* "Based on *Carter*, probation officers are required to have reasonable suspicion of criminal conduct in order to search a probationer's residence when the terms of probation do not require him to submit to warrantless searches." *United States v. Riley*, 706 F. App'x 956, 960 (11th Cir. 2017).

More recently, in *United States v. Williams*, 650 App'x 977 (11th Cir. 2016), the Eleventh Circuit considered whether the suspicionless search of a probationer's residents, authorized by a probation condition, comported with the reasonableness requirement of the Fourth Amendment. The condition of probation expressly stated that the probationer would "submit to a warrantless search to his person, residence, and vehicles." *Id.* at 978. The court upheld the suspicionless search explaining that searches of a probationer's home without a warrant or reasonable suspicion do not violate the Fourth Amendment when authorized by a condition of probation. *Id.* at 978-979

The parties dispute whether Logan's probation conditions require him to submit to warrantless searches and relatedly, whether reasonable suspicion is required to conduct a warrantless search. Logan argues that like in *Carter*, the probation order only required him to submit to home visits and thus, he had a higher expectation of privacy in his residence and reasonable suspicion was required. On the other hand, the Government argues that *Williams* controls because Logan executed DC3-246 form, which notified him that probation officers have the right to search his residence.

Upon careful consideration of the evidence and testimony in the record, the Court finds that *Carter* is controlling under the circumstances. The Government's argument that the DC3-246 form constitutes advanced consent to a search as a condition of probation is unavailing because Warren's testimony supports the conclusion that the probation order, not the instruction form, governs the terms and condition of Logan's probation. Indeed, Warren testified that had Logan refused to sign this form, his refusal would have constituted a violation of the conditions of probation (found in the probation order) for failing to follow instructions of the probation officer. Under such conditions, one can hardly find that Logan's signature on the form constitutes a knowing and voluntary consent to random searches. At best, it informs Logan of the probation officer's position that random searches will take place.

Accordingly, because the probation condition at issue here is exactly the one at issue in *Carter*, the Government was required to have reasonable

suspicion to conduct the search. *Carter,* 566 F.3d at 974. The Government conceded that it did not have reasonable suspicion and thus, the search was unconstitutional.

### 4. The Good Faith Exception Does Not Apply

The Government argues that even if the search of Logan's residence was unconstitutional, the physical evidence at issue should not be excluded because the search was conducted in good faith relying on Florida law. The Government explains that Warren conducted the search relying on *Grubbs v. State*, 373 So. 2d 905 (Fla. 1979), which recognized that a warrantless search of a probationer's residence is valid and necessary to properly supervise probationers.

Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exclusionary rule, as it is known, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). One exception to the exclusionary rule, is the good faith exception which applies to an officer's reliance on binding precedent. *United States v. Lebowitz,* 676 F.3d 1000, 1010 (11th Cir. 2012) (holding that the officer's good faith reliance on binding precedent precluded exclusion of evidence seized during a warrantless search). However, there is no good faith exception to the exclusionary rule for officers who do not act in accordance with governing law. "To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." *United States v. Chanthasouxat,* 342 F.3d 1271, 1279-80 (11th Cir. 2003) (suppressing evidence discovered during an unconstitutional traffic stop and holding that an officer's mistake of law during a traffic stop did not fall within the good faith exception to the exclusionary rule because it ran afoul of the purpose of the rule).

The good faith exception does not apply under these circumstances because the officer misunderstood *Grubbs* and its application to new criminal charges in a new case. There, the Florida Supreme Court held that a probation officer may conduct a warrantless search of a probationer's residence without reasonable suspicion, and if any evidence is discovered it may only be used in probation violation proceedings but may not be used in a new criminal proceeding. *United States v. Wasser,* 586 F. App'x 501, 503 n.3 (11th Cir. 2014)

(interpreting *Grubbs*.). "The [Florida Supreme] court elaborated that probation officers and law enforcement officers <u>must comply with customary Fourth Amendment requirements to use evidence seized from a probationer's residence in a new criminal proceeding</u>." *Id.* at 503 n.3 (emphasis added). Here, the Government did not comply with the requirements of the Fourth Amendment and it intends to use the evidence seized from Logan's residence in a new criminal proceeding. Accordingly, the good faith exception does not apply, and the evidence discovered at Logan's residence (and being used against only Logan)[1] is excluded.

## 5. Conclusion

For these reasons, Logan's motion to suppress is **granted**. **(ECF No. 18.)** The physical evidence including the holster, magazine, ammunition, and firearm discovered in the closet are excluded.

**Done and ordered** at Miami, Florida on June 22, 2021.

_____
Robert N. Scola, Jr.
United States District Judge

---

[1] The Court notes that the Government indicated that separate charges were brought against the occupant of the second room, and this Order has no bearing on that case.